IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SABIR WILCHER,

                              OPINION and ORDER

      Plaintiff,

                              12-cv-803-jdp[1]

      v.

RICK RAEMISCH, WILLIAM POLLARD,
TYLER ROMENESKO, WILLIAM SWIEKATOWSKI
ROBIN LINDMEIER, CHRISTOPHER STEVENS
and PETER ERICKSEN,

      Defendants.

---

In this case brought under 42 U.S.C. § 1983, pro se prisoner Sabir Wilcher claims that defendant prison officials violated his rights under the First Amendment by giving him false conduct reports, convicting him on one of those reports, and transferring him to the Wisconsin Secure Program Facility, all in retaliation for his refusal to cooperate with an investigation into drug smuggling at his prison. The defendants move for summary judgment on all claims.

Among the materials plaintiff submits in response to defendants' summary judgment motion is a motion to dismiss defendants Rick Raemisch and William Pollard from the case "based on plaintiff's inability to obtain the necessary evidence needed against them." Dkt. 48. Once a defendant files an answer or a motion for summary judgment, a plaintiff may dismiss his claims only "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Although plaintiff's motion does not expressly state that he agrees to dismissal with prejudice, I infer that he understands that the result of his motion will be a resolution of his

---

[1] This case was reassigned to me pursuant to a June 5, 2014 administrative order. Dkt. 56.

1

claim on the merits (for lack of evidence) and that he will not be able to reinstate his claims. In any case, defendants Raemisch and Pollard have presented meritorious fully briefed motions for summary judgment, and thus the only conditions under which dismissal would be proper are that the dismissal would be with prejudice. Although at this late date, plaintiff's motion does not save the court or defendants much time or effort, I appreciate plaintiff's concession that he does not have evidence to sustain claims against these defendants. Accordingly, I will grant plaintiff's motion and dismiss the claims against Raemisch and Pollard with prejudice.

After considering the parties' summary judgment materials, I conclude that plaintiff fails to show that any of the named defendants retaliated against him for exercising his First Amendment rights, so I will grant defendants' motion for summary judgment and direct the clerk of court to enter judgment in favor of defendants and close the case.

From the parties' proposed findings of fact and supporting evidence, I find that the following facts are material and undisputed unless indicated otherwise.

## UNDISPUTED FACTS

At all times relevant to this matter, plaintiff Sabir Wilcher was incarcerated at the Green Bay Correctional Institution (GBCI). With the exception of defendant Rick Raemisch, who was the secretary of the Wisconsin Department of Corrections, all of the defendants worked at GBCI: Tyler Romenesko was a correctional officer, Robin Lindmeier and William Swiekatowski were lieutenants, Christopher Stevens was a captain, Peter Ericksen was the security director, and William Pollard was the warden.

2

Plaintiff had been approved to transfer to the Stanley Correctional Institution, a medium security prison, a less restrictive facility than GBCI. However, before plaintiff was transferred, he was placed in temporary lockup as part of an investigation regarding the smuggling of drugs into GBCI. Defendants do not explain in detail what prompted the investigation, but on March 5, 2010, defendant Swiekatowski completed an incident report about a visitor named Karen Banek, stating "Visitor denied face to face visit as we received information she was bringing contraband into GBCI . . . ."

On March 15, 2010, plaintiff's property was packed up, either in anticipation of his transfer or because he had been placed in temporary lockup. Defendant Romenesko conducted the pack-up. Romenesko confiscated several items from in or around plaintiff's cell such as publications over the allowable limit, a state towel from the bathhouse, a bag of tortilla shells from the kitchen, nasal spray with an unknown colored liquid inside, nails, super glue, a piece of clothing that had been altered, and an ibuprofen tablet. Romenesko states that he recovered these items from plaintiff's cell. Plaintiff states that the items were "all in a pile of garbage after I swept both my cell and the tier in my area," although he seems to admit possessing at least some of the items at some point. (Although plaintiff proposes as fact that he never owned the confiscated items, his proposed fact conflicts with his earlier statements made during his disciplinary appeals.) Romenesko issued a conduct report to plaintiff for possession of contraband, misuse of prescription medication, theft, and alteration of property. Because the pack-up occurred at the end of Romenesko's shift, he did not complete the conduct report until March 17, 2010. At the time he conducted the pack-up and authored the conduct report, Romenesko did not know why plaintiff had been placed in temporary lockup.

In his capacity as security director, defendant Ericksen (or his designee) reviews all conduct reports and decides whether a report should proceed to a disciplinary hearing. Ericksen's designee reviewed Romenesko's conduct report and concluded that the matter should proceed to a hearing. After a March 29, 2010 hearing, plaintiff was found guilty of violating several prison regulations and sentenced to 90 days of disciplinary separation.

Also during the evening of March 15, 2010,[2] defendant Lindmeier interviewed plaintiff about the drug smuggling scheme. According to Lindmeier, the purpose of the interview was to find out what information plaintiff knew about the smuggling and his role in it along with Banek and a prisoner named Derek Williams.

Plaintiff states that he was not involved in the smuggling. He contends that Lindmeier was not interested in truthful information about the scheme, but that she "instruct[ed] and order[ed]" plaintiff "to provide false information" about Williams. The parties dispute what Lindmeier said to plaintiff in the interview. But crediting plaintiff's view of the evidence, as I must on defendants' motion, plaintiff avers that Lindmeier made the following statements:

- "Derek Williams ever mention his lawsuit to you, it was a big mistake."

- "I know what you and Williams have been doing, he gets the drugs and you sell it for canteen."

- "Since you don't have any information you wish to share you can forget about your camp and think about it for a while."

- "Just tell me anything about Williams."

- "Ericksen will be to see you."

---

[2] The parties do not explain whether Lindmeier's interview occurred before or after Romenesko's pack-up. It appears that plaintiff is saying the interview happened after the pack-up; the timeline given by defendants implies the opposite.

4

The parties also dispute what, if any, information plaintiff shared with Lindmeier. Defendants state that plaintiff was completely uncooperative. Plaintiff says that he told Lindmeier about a phone call he made on March 7, 2010, to Banek on Williams' behalf after Williams asked him to relay the contents of a "detailed letter" to Banek. Plaintiff states that he did not have any further information about Williams, Banek, or drug smuggling at the prison, and that he refused to provide false testimony.

Plaintiff submits a declaration from Williams stating that on March 15, 2010, defendant Stevens told Williams "you can get Wilcher off if you just admit to this drug operation, we all know Wilcher wasn't involved."

Lindmeier continued her investigation. Plaintiff remained in temporary lockup during the investigation. Lindmeier states that she assembled the following evidence:

- Statements from two confidential inmate informants at GBCI providing information that Banek would smuggle drugs into the institution while visiting and give them to Williams. Williams would give the drugs to plaintiff, who would deal them to other inmates.

- A letter written to Banek from another inmate stating that "Derek was not mad you did not do those orders . . . . Sabir and J in Portage are the only ones that can call. . . . All previous orders or business for anyone is on hold till Derek talks to you . . . ."

- A March 7, 2010 recorded phone call from plaintiff to Banek, in which plaintiff stated that another inmate was placed in the "hole" so everything related to him was on hold. The inmate plaintiff referred to had been placed in segregation for possession of marijuana and drug paraphernalia.

- Several other phone calls in which Williams and another inmate spoke with Banek about money being sent in the mail to her.

Defendants have submitted this evidence with their summary judgment materials, but they have been unable to locate the original copies of the confidential informant statements. According to defendants, defendant Lindmeier saved on her computer versions of the two

5

confidential informant statements implicating plaintiff in the drug smuggling scheme. Defendants provide screen shots from Lindmeier's computer purporting to show that the confidential informant statement documents were typed into her computer on March 25 and April 4, 2010. In response to litigation discovery requests, defendant Swiekatowski was subsequently asked to locate the signed, notarized, and sealed confidential informant statements that were used as evidence for plaintiff's conduct report, but he could not find them. Defendants have submitted what they state to be accurate, albeit unsigned or notarized, copies of the statements. Plaintiff contends that these statements never existed and rather were forged by prison staff. Plaintiff provides documents from Williams' related civil case in this court, 11-cv-411, stating that defendants could not find the confidential informant statements during that litigation. Apparently in that case defendants did not provide the unsigned copies they have submitted in this case.

Lindmeier states that based on the above evidence, including the confidential informant statements, she believed that plaintiff was guilty of violating Wis. Admin. Code § DOC 303.43(c), the regulation forbidding possession of intoxicants, even though no drugs were found in plaintiff's possession. On May 20, 2010, Lindmeier authored a conduct report charging plaintiff with conspiracy to possess intoxicants. Defendant Swiekatowski assisted Lindmeier in preparing the conduct report by reviewing the confidential informant statements (which contain statements about many different issues raised by the interviewer) and selecting the relevant information, as well as reviewing the recorded phone calls. Swiekatowski stated that he was not involved in interviewing the witnesses for this matter. However, plaintiff provides an affidavit from Williams stating that around March 16, 2010,

he asked Swiekatowski if Swiekatowski knew why Williams was in segregation and Swiekatowski's response was, "When you challenge the administration, bad things happen."

Ericksen's designee reviewed Lindmeier's conduct report and concluded that the matter should proceed to a hearing.

Defendant Stevens was the hearing officer for the June 8, 2010 disciplinary hearing on this conduct report. According to defendants, the evidence considered at hearing included Lindmeier's conduct report, physical evidence including a letter, two confidential informant statements and a CD of a phone call, a statement from plaintiff, and advocate and witness testimony from Williams and another inmate. At the hearing, plaintiff never argued that he received the conduct report because he was being retaliated against. After the hearing, Stevens found plaintiff guilty of conspiracy to possess intoxicants and sentenced him to 360 days of disciplinary separation.

Plaintiff attempts to dispute that certain evidence was presented at the hearing. Plaintiff states that the confidential informant statements were not actually considered at the hearing because he never received a copy of the DOC-77 confidential informant form[3] that would have been filled out if the statements had been considered. However, defendants point out that plaintiff made this request to an official at the Columbia Correctional Institution (where he was incarcerated at the time), but that the pertinent DOC-77 form was stored at GBCI. Defendants have produced a DOC-77 form from GBCI stating that the confidential informant statements were considered during plaintiff's hearing.

Plaintiff also states that Stevens did not play the phone recording at the hearing despite his request for it to be played. Defendants agree that Stevens did not play the

---

[3] This appears to be a form memorializing the disciplinary hearing officer's consideration of a confidential informant's written statement in the place of the inmate's in-person testimony.

7

recording at the hearing, but they have Steven's affidavit stating that Stevens listened to the recording at some point prior to the decision.

Plaintiff appealed Stevens' decision. Defendant Pollard affirmed the decision on June 16, 2010. Plaintiff did not state in his appeal that he was being retaliated against.

On June 21, 2010, plaintiff filed an inmate grievance stating that he received the conduct report for refusing to be a confidential informant. Defendant Pollard followed the institution complaint examiner's recommendation to dismiss the grievance. None of plaintiff's inmate grievances concerning his allegations of retaliation in this case were reviewed by defendant Raemisch.

On July 28, 2010, the Program Review Committee (PRC) held a hearing to address plaintiff's placement and classification needs. The PRC recommended plaintiff's transfer to the Wisconsin Secure Program Facility. The recommendation was approved by an offender classification specialist. None of the defendants in this case had any involvement in the decision to transfer plaintiff.

## OPINION

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland*

8

*Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

To state a claim for retaliation, a plaintiff must identify (1) the constitutionally protected activity in which he was engaged; (2) one or more retaliatory actions taken by each defendant that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) sufficient facts to make it plausible to infer that plaintiff's protected activity was one of the reasons defendants took the action they did against him. *Bridges v. Gilbert*, 557 F.3d 541, 556 (7th Cir. 2009).

### A. Protected Speech

In the December 26, 2012 screening order in this case, the court described plaintiff's purported constitutionally protected activity as the "right to refuse to speak with prison officials" during the March 15, 2010 interview with defendant Lindmeier, but noted that the question whether the state may restrict this activity is governed by the standard established in *Turner v. Safley*, 482 U.S. 78, 89 (1987). Dkt. 9 at 9-10. Under *Turner*, "prison officials may . . . compel a prisoner to speak if doing so is 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner*, 482 U.S. at 89). Whether plaintiff's refusal to speak in connection with the investigation of wrongdoing in prison is protected speech under *Turner* is a close question. I would reject defendants' suggestion that such a refusal is merely conduct with no expressive content. But the weight of authority probably supports defendants' view that the refusal to answer legitimate investigatory questions in a prison is not protected speech. However, I need not reach this constitutional issue to resolve defendants' motion.

9

Plaintiff's allegations have evolved from those made in his complaint. In his complaint, plaintiff suggested that his reasons for refusing to speak to defendant Lindmeier were twofold: (1) he did not want to be known as a "snitch," which would place him in danger; and (2) he had no information to give and refused to provide false information. But now on summary judgment, plaintiff states that he indeed cooperated with Lindmeier by sharing the only information he knew—that he called Banek on March 7, 2010 to relay the contents of a letter after being asked to do so by Williams. Plaintiff denies that he had any information about Williams' involvement in drug smuggling, so plaintiff was not in a position to be a snitch. Thus, I need not consider whether an inmate has a constitutional interest in choosing not to cooperate to avoid the "snitch" label.

Plaintiff's position now seems to be that he refused to provide false information after being asked to do so by Lindmeier. I would be inclined to assume (without actually deciding) that prisoners have a constitutional interest in refusing an officer's request to provide *false* testimony, because I cannot imagine how prison officials would have a legitimate penological interest in obtaining false testimony from one prisoner to use against another. But I need not reach this issue because the record evidence does not support plaintiff's contention that this is what happened here. Assuming plaintiff's version of events to be true, he points to the following statements as evidence of Lindmeier's intent to have him provide false testimony:

- "Derek Williams ever mention his lawsuit to you, it was a big mistake."
- "I know what you and Williams have been doing, he gets the drugs and you sell it for canteen."
- "Since you don't have any information you wish to share you can forget about your camp and think about it for a while."
- "Just tell me anything about Williams."

- "Ericksen will be to see you."

On their face, none of these statements indicate Lindmeier's intent to have plaintiff fabricate lies about Williams or Banek. Nor can I conclude, given the context of the entire summary judgment record, that ambiguities in the meaning of Lindmeier's statements such as "[t]ell me anything about Williams," create a reasonable inference that she intended to induce plaintiff to provide false testimony, or even that she wanted false testimony. Lindmeier provides undisputed evidence showing that she believed that plaintiff, Williams, and Banek were involved in a drug smuggling operation, and her statements to plaintiff are consistent with that interpretation of events.

Plaintiff questions whether Lindmeier truly believed that he was involved in drug smuggling. He argues that Lindmeier's (as well as the rest of the defendants') malicious intentions can be proven by the fact that the two most incriminating pieces of evidence—the original confidential informant statements—have been lost. Although the loss of these originals is unfortunate, the defendants are not foreclosed from using other evidence to prove the existence and content of the missing documents, which they have done here. *See* Fed. R. Evid. 1004 ("An original is not required and other evidence of the content of a writing . . . is admissible if . . . all the originals are lost or destroyed, and not by the proponent acting in bad faith"). Nor does the fact that the originals are missing entitle plaintiff to an inference that Lindmeier fabricated the statements. *See Everett v. Cook County*, 65 F.3d 721, 727 (7th Cir. 2011) (for factfinder to make inferential leap that missing documents would have contained information harmful to defendant, plaintiff must show that documents were intentionally destroyed in bad faith). Plaintiff tries to show bad faith by arguing that defendants now seem to have more information about the statements than they had during

11

Williams' civil lawsuit. Unlike in Williams' case, Lindmeier can now recall when the statements were taken and has provided unsigned copies of them, which plaintiff finds suspicious. But all this shows is that Lindmeier accessed the unsigned statements on her computer, not that she did anything to destroy the signed copies. As the Court of Appeals stated in Williams' case:

> Williams's only response is that, because prison personnel have misplaced the confidential informants' statements, he is entitled to an inference that the statements never existed. But whatever adverse inference can be drawn from the loss of the statements, Williams offers no legitimate reason to draw it against Lindmeier or Swiekatowski because he furnishes no evidence that either of them played any role in the misplacement of the documents. Williams's bare suspicion that the statements never existed is insufficient to create a genuine issue of material fact . . . .

*Williams v. Raemisch*, 545 F. App'x 525, 529 (7th Cir. 2013).

In sum, I need not reach the question of whether plaintiff would have been constitutionally entitled to refuse to cooperate with Lindmeier, because given the facts in the summary judgment record, the most I can infer is that plaintiff provided what little information he had but declined to speak further because he had no more information to give. Nevertheless, even if I assume that plaintiff's interaction with Lindmeier was a constitutionally protected activity, to prevail on his retaliation claims he must still show that defendants took action against him *because* of his statements, or lack thereof, to Lindmeier. The next question, which is decisive in this case, is whether the summary judgment evidence would support a reasonable inference that the defendants issued plaintiff a conduct report because he did not provide information to Lindmeier.

B.  Causation

There is a burden-shifting analysis for proving this element of a retaliation claim. *Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011) (clarifying that "[t]he *Mt. Healthy* standard continues to govern [First Amendment] suits"). Under this analysis,

> the burden of proof relating to causation is divided between the parties in First Amendment tort cases. To make a prima facie showing of causation the plaintiff must show only that the defendant's conduct was a sufficient condition of the plaintiff's injury [that is, sufficient to cause it]. The defendant can rebut, but only by showing that his conduct was not a necessary condition of the harm—the harm would have occurred anyway.

*Greene*, 660 F.3d at 980; *see also Spiegla v. Hull*, 371 F.3d 928, 941–43 (7th Cir. 2004). If defendants show that they would have taken the allegedly retaliatory action anyway, plaintiff "must then demonstrate that the defendant's proffered reasons for the decision were pretextual and that retaliatory animus was the real reason for the decision." *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011). "At the summary judgment stage, this means that a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Id.*, citing *Vukadinovich v. Board of School Trustees*, 278 F.3d 693, 699 (7th Cir. 2002).

Plaintiff's claims cover the following alleged retaliatory actions:

- Defendants Lindmeier, Swiekatowski, Romenesko, and Ericksen filed false conduct reports against him;

- Defendant Stevens found him guilty on the false conduct report for conspiracy to possess intoxicants without giving him an opportunity to see the evidence; and

- Defendants Pollard and Raemisch affirmed the convictions despite the procedural flaws and used these convictions to support his transfer to a higher security prison.

1.      **Defendant Lindmeier**

In some retaliation cases, there is an obvious direct connection between the protected speech and punishment by prison officials. This is not the case here. At least on the face of it, Lindmeier did not give plaintiff a conduct report for refusing to cooperate with her investigation; instead she gave plaintiff the conduct report for being part of the drug smuggling scheme, more than two months after her interview with plaintiff.

Plaintiff's prima facie case for retaliation largely relies on his beliefs that Lindmeier (1) directed him to make false statements about inmate Williams; and (2) gave him a conduct report that was false, because plaintiff was not involved in the smuggling scheme. I have already discussed above how no reasonable jury could infer that Lindmeier was pressing plaintiff for false testimony.

Plaintiff states that he was not involved in smuggling and seems to assume that a dispute over the truth of whether he was involved suffices to raise a disputed issue of fact over whether Lindmeier's conduct report was pretextual. The falsity of a conduct report *could* be circumstantial evidence of pretext if it was supported by evidence that the prison official did not sincerely believe that the prisoner committed the offense. But in this case, plaintiff has not adduced facts or evidence tending to show that defendant Lindmeier knew that plaintiff was innocent, and yet gave him the conduct report anyway.

The most favorable inference a reasonable juror could draw from the summary judgment record is that Lindmeier *mistakenly* thought plaintiff was involved in drug smuggling, which is insufficient to show pretext in the context of a retaliation claim. *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838-39 (7th Cir. 2009) "Pretext includes more than just faulty reasoning or mistaken judgment on the part of the employer . . . . If the employer

honestly believed the reason it proffers for its employment decision, the reason was not pretextual." (internal quotation omitted); *see also Redd v. Nolan*, 663 F.3d 287, 295 (7th Cir. 2011) ("even if Velez's conclusions were wrong, that would not support an inference that he or other DOC officials intended to retaliate against Redd for exercising her rights under the First Amendment"); *Davis v. Haines*, 2008 WL 2610144, *1 (W.D. Wis. July 1, 2008) ("Plaintiff does not point to any evidence suggesting that defendants did not honestly believe plaintiff was a gang member, which is all that matters for the purpose of countering plaintiff's claim of unlawful retaliation. A genuine mistake is not a constitutional violation.").

In trying to show that Lindmeier's beliefs were not sincere, plaintiff questions the authenticity of some of the evidence defendants present to show Lindmeier's belief. But as stated above, Lindmeier presents properly authenticated evidence that lead her to believe that plaintiff was involved in smuggling. Plaintiff also cites Lindmeier's statement that a previous lawsuit filed by Derek Williams was a "big mistake." However, as both this court and the court of appeals stated in Williams' own civil action alleging retaliation for his previous lawsuit, Lindmeier's statement at most evinces that she was "resentful because of Williams's earlier suit" but fails to rebut the evidence showing that Lindmeier honestly thought that both Williams and plaintiff violated prison rules. *Williams*, 545 F. App'x 525, 527, 529 (7th Cir. 2013); *see also Williams v. Raemisch*, Case No. 11-cv-411-slc (Mar. 29, 2013) ("Williams, then, must produce evidence showing that Lindmeier's stated reason for filing the conduct report against him is a lie. He cannot meet this burden."). Plaintiff provides no more evidence in this case than Williams did in his. Because all plaintiff presents is his speculation that Lindmeier meant to retaliate against him, I will grant defendants' motion for summary judgment regarding Lindmeier's conduct report. *Davis v. Carter*, 452

F.3d 686, 697 (7th Cir. 2006) (when evidence from non-moving party provides for only speculation or guessing, summary judgment is appropriate).

### 2. Defendant Swiekatowski

Plaintiff's evidence of retaliation against the remaining defendants is even weaker than his evidence against Lindmeier, because none of those defendants were present for Lindmeier's interview, when the alleged protected First Amendment activity took place. Swiekatowski says that at the time he assisted Lindmeier with the conduct report regarding drug smuggling, he did not know that plaintiff failed to cooperate with Lindmeier. Plaintiff attempts to rebut Swiekatowski's statement with evidence that Swiekatowski filed an incident report about Banek on March 5, 2010. However, the March 5 report merely shows that Swiekatowski was aware of possible drug smuggling, not that plaintiff failed to cooperate with Lindmeier's interview, which did not take place until ten days after Swiekatowski's report.

Plaintiff also argues that "[i]f two security Supervisors are doing an investigation or assisting each other in an investigation, then they'll share information with one another about all the going-on's of the investigation. It's not far-fetched to think or believe Lindmeier shared with Swiekatowski plaintiff's refusal to provide information or provide false information." This is mere conjecture on the part of plaintiff and not sufficient evidence to show at this summary judgment stage that there are genuine factual issues for trial.

Finally, plaintiff presents an affidavit from Williams stating that Swiekatowski told him, "When you challenge the administration, bad things happen." But plaintiff does not explain how Swiekatowski would be motivated to retaliate against *plaintiff* for a lawsuit that

16

*Williams* filed. Even assuming that plaintiff could show that Swiekatowski was motivated to retaliate against plaintiff, plaintiff fails to rebut the evidence showing that the conduct report was submitted because prison staff sincerely believed plaintiff had violated prison rules.

### 3. Defendant Romenesko

Plaintiff's claim against defendant Romenesko regarding the allegedly false conduct report for possession of contraband and other related offenses fails for reasons similar to the claims against Lindmeier and Swiekatowski. Romenesko states that he did not know why plaintiff was placed in temporary lockup. Plaintiff attempts to dispute this by stating that "with Officer Romenesko being the subordinate staff member of Lindmeier it is not unreasonable that, Lindmeier informed Officer Romenesko the reason plaintiff was placed on TLU and to write a conduct report." But once again, this is merely plaintiff's speculation about what Romenesko could have known. He states also that "it is common practice for the supervisor to inform her subordinates why someone is being placed on TLU" but this is supported only by plaintiff's declaration, which lacks foundation for this proposition about the "common practices" of the management of prison staff.

Finally, plaintiff relies on the allegedly suspiciousness of the timing (two days) between his alleged failure to cooperate with Lindmeier and Romenseko's conduct report. In certain instances, temporal proximity may serve to prove plaintiff's prima facie case of retaliation, but it will not, on its own, rebut a defendant's good-faith belief that there was a justifiable reason to take action against plaintiff. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796-99 (7th Cir. 1997). Here, defendants have unrebutted evidence that plaintiff had admitted to possessing at least some of the contraband that he was charged with possessing.

17

And, even drawing inferences most favorably for plaintiff, the dispute over this conduct report was whether plaintiff should have been charged with contraband violations if he had only briefly come into contact with the contraband while he was sweeping. There is no indication that, even if Romensko had mistakenly made some of the charges, he did so because of plaintiff's interview with Lindmeier.

### 4. Defendant Ericksen

It is undisputed that Ericksen did not personally approve the conduct reports filed against plaintiff. Plaintiff states that "it is not unbelievable he was informed of the outcome, as it related to plaintiff" and he points to Lindmeier's statement in the interview suggesting that Ericksen would be informed about the investigation. However, to sustain a retaliation claim against Ericksen, plaintiff needs to show that Ericksen was personally involved in a retaliatory action, *see Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The evidence of record shows that Ericksen's designee, not Ericksen himself, approved the conduct reports at issue in this case. In light of this evidence, plaintiff has failed to place any evidence in the record that Ericksen had anything to do with the conduct reports. Accordingly, defendants must be granted summary judgment on this claim.

### 5. Defendant Stevens

Plaintiff argues that defendant Stevens retaliated against him by ruling against him in his disciplinary hearings and committing various procedural errors in the proceedings. All plaintiff can muster is evidence that Stevens was aware of the investigation into drug smuggling, including a declaration from Williams stating that on March 15, 2010, Stevens

told Williams "you can get Wilcher off if you just admit to this drug operation, we all know Wilcher wasn't involved."[4] Plaintiff seems to think that this means Stevens knew he was innocent yet punished him anyway, but that is not a reasonable inference from this statement given the timing of it. Stevens allegedly made this statement on March 15, 2010, before the evidence implicating plaintiff was collected by Lindmeier.

Moreover, even if a reasonable juror could draw an inference that Stevens thought plaintiff was innocent yet punished him anyway, plaintiff fails to explain *why* he would have done so. Plaintiff fails to show any connection between Stevens' ruling and plaintiff's failure to cooperate with Lindmeier. At the hearing, plaintiff never mentioned his failure to cooperate with Lindmeier or Lindmeier's alleged retaliation. Without evidence showing that Stevens acted in retaliation for plaintiff's protected speech, his retaliation claim fails.

### 6. Defendants Pollard and Raemisch

Defendants Pollard and Raemisch have been dismissed from this case by virtue of plaintiff's motion. Dkt. 48. I touch briefly on the claims against them, because even if plaintiff had not dismissed his claims against these defendants, they would have fallen on summary judgment. Defendant Pollard states that he was not aware of plaintiff failing to cooperate with Lindmeier until plaintiff filed an inmate grievance *after* Pollard ruled on plaintiff's appeal of his disciplinary hearing regarding drug smuggling. In addition, defendants state that defendant Raemisch was not involved in ruling on plaintiff's appeals of his disciplinary hearings. Neither Pollard, Raemisch, nor any of the other defendants, were

---

[4] Presumably this means that Stevens was involved in the investigation into the smuggling operation, yet served as hearing examiner on plaintiff's conduct report regarding that operation. While Stevens' involvement as both investigator and hearing examiner raises questions about the process plaintiff received, it does not imply a retaliatory motive on Stevens' part.

involved in plaintiff's transfer to WSPF. Plaintiff does not dispute any of these proposed facts, so summary judgment would have been granted to defendants Pollard and Raemisch on these claims even had they not already been dismissed.

## ORDER

IT IS ORDERED that

1. Plaintiff Sabir Wilcher's motion to dismiss defendants Rick Raemisch and William Pollard from the case, Dkt. 48, is GRANTED, and the claims against Raemisch and Pollard are DISMISSED with prejudice.

2. Defendants' motion for summary judgment, Dkt. 34, is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close the case.

Entered this 15th day of July, 2014.

BY THE COURT:

/s/
JAMES D. PETERSON
District Judge